Brian O'SULLIVAN, Plaintiff,

v.

LONGVIEW FIBRE COMPANY, Defendant.

No. C 97–3643 MMC.

United States District Court, N.D. California.

Nov. 18, 1997.

744

Carlos M. Alcala, Alcala & Velez, Sacramento, CA, for Plaintiff.

Robert T. Fries, Steinhart & Falconer, San Francisco, CA, for defendant.

### ORDER VACATING HEARING DATE; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CHESNEY, District Judge.

Plaintiff was fired from his job of 19 years after he signed a statement admitting drug use. He filed a complaint for breach of contract in state court, which was removed to this Court on the ground that the terms of his employment were governed by a collective bargaining agreement ("CBA"). Now

before the Court is the motion of defendant to dismiss or, in the alternative, for summary judgment.

The Court deems this matter appropriate for determination upon the papers filed in support of and in opposition to the motion. Accordingly, the hearing set for November 21, 1997, is hereby VACATED.

### FACTS/PROCEDURAL HISTORY

On April 30, 1997, plaintiff Brian O'Sullivan ("O'Sullivan") filed a breach of contract complaint against his former employer, defendant Longview Fibre Company ("Longview") in Alameda County Superior Court. O'Sullivan alleges that he worked for Longview for over nineteen years under an implied-in-fact contract that O'Sullivan would not be fired except for good cause. According to O'Sullivan, on June 20, 1995, he was "instructed to attend an interview, which turned out to be an interrogation about drug use." After being intimidated, O'Sullivan signed a statement admitting that he used drugs. He was thereupon fired. Plaintiff contends that by terminating him, Longview breached the implied-in-fact agreement because:

> (1) There was no evidence of daily use while at work; (2) Plaintiff incurred no accidents; (3) There was no adverse publicity; (4) No prior disciplinary history; (5) The discharge was not consistent with a co-policy; and (6) other employees were not so treated.

(Complaint p. 3).

Longview was served with the summons and complaint on September 8, 1997. (Notice of Removal 1:23–26). On October 3, 1997, Longview removed the case to this Court on the ground that O'Sullivan's claim was preempted by § 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185. Filed with the Notice of Removal was a copy of a collective bargaining agreement ("CBA") covering the period June 17, 1995 through June 16, 1999. (Arkell Decl. in Supp. of Notice of Removal, Ex. 1).

On October 10, 1997, Longview filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment,

noticed for hearing on November 21, 1997. O'Sullivan filed a late opposition to the motion on November 5, 1997, and Longview filed a late reply on November 14, 1997.

## DISCUSSION

Longview contends that O'Sullivan's breach of contract claim must be dismissed because (1) he failed to exhaust his remedies under the CBA; and, even if this failure is excused (2) he failed to file the instant breach of contract claim within the six-month statute of limitations period applicable under the LMRA.

### I. Legal Standard

#### A. Motion to Dismiss—Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

Generally, a court may not consider materials beyond the pleadings in ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). However, material which is properly submitted as part of the complaint may be considered. *Id.* In addition, a court may consider documents whose contents are specifically alleged in a complaint, and whose authenticity no party questions, even though the documents are not physically attached to the pleading. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). Finally, the Court may take judicial notice of matters of public record outside the pleadings. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).

In this case, Longview requests that the Court consider (1) the CBA, which Longview filed with its Notice of Removal, and (2) the declaration of R.B. Arkell, Vice President of Industrial Relations and General Counsel of Longview. Since neither piece of evidence was attached or specifically referred to in O'Sullivan's complaint, the Court must construe Longview's motion as one for summary judgment.

#### B. Motion for Summary Judgment—Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. The moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the nonmoving party has the burden of proof, but may discharge its burden simply by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). When determining whether there is a genuine issue for trial, "inferences

to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## II. Analysis

### A. LMRA Preemption

Section 301 of LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

As interpreted by the courts, § 301 confers jurisdiction on the federal courts over controversies involving collective bargaining agreements, and, in addition, "authorizes the courts to fashion 'a body of federal law for the enforcement of these collective bargaining agreements.'" *United Steelworkers of America v. Rawson,* 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) (*quoting Textile Workers v. Lincoln Mills of Alabama,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957)). The comprehensive body of law thereby created is designed to guarantee the smooth functioning of the voluntary collective bargaining process and the preservation of industrial peace. *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–104, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962).

"Although the language of § 301 is limited to suits for violation of contracts, it has been construed quite broadly to cover most state-law actions that require interpretation of labor agreements." *Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers, et al.,* 109 F.3d 1353, 1356 (9th Cir.1997) (internal quotations omitted). Where the suit requires interpretation of a labor agreement, § 301 "converts an ordinary state law complaint into a federal claim" and empowers the defendant to re-

move the action to federal court. *Id.* "State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *United Steelworkers,* 495 U.S. at 368, 110 S.Ct. at 1909. On the other hand, where a state law-based claim does not require interpretation of a collective bargaining agreement, it is not preempted by federal law. *Beals v. Kiewit Pacific Co., Inc.,* 114 F.3d 892, 895 (9th Cir.1997); *Contract Services Network, Inc. v. Aubry,* 62 F.3d 294, 299 (9th Cir.1995).

■ Longview asserts, correctly, that O'Sullivan's breach of contract claim is preempted because the terms of his employment, and the conditions under which he could be terminated, were governed by the CBA. Specifically, the CBA provides:

Discharge or suspension of an Employee (not including a temporary suspension pending consideration of discharge) shall be based on just and sufficient cause with full explanation given to the Employee in writing. Proven violations as set forth in the Company's Substance Abuse Policy and Plant Rules, currently in effect or as may hereafter be revised, constitute "just and sufficient cause" for the purpose of this provision.

(Arkell Decl. in Supp. of Removal, Ex. 1 (CBA § 138 Pa. 576, 21 A. 1)). Where as here an employee's claim is that he was terminated without good cause, and where the employee's claim does not implicate public policy, the claim is preempted. *See Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997, 1001–1002 (9th Cir.1987); *see also Schlacter–Jones v. General Telephone,* 936 F.2d 435, 439–40 (9th Cir.1991) (where drug testing policy was contemplated by or part of CBA, plaintiff's claim that she was terminated without good cause after testing positive for drugs was preempted).

In an attempt to avoid the conclusion of preemption, O'Sullivan recharacterizes his claim. He asserts that "the underling [sic] issue which is the basis of plaintiff's complaint is not whether or not there was just and sufficient cause for his discharge, but whether or not he was afforded the same

treatment as other employees who had signed statements under coercement [sic] or tested positive for drug use." (Opp.5:15–18).

O'Sullivan's attempt must fail. His complaint does not allege that Longview discriminated against him in violation of California's fair employment laws, but that Longview terminated him without good cause since there was no evidence that he had used drugs at the workplace or had been performing his work in a dangerous manner. If a court were to address this claim on its merits, the court would be required to examine and interpret the CBA and the Substance Abuse Policy then in effect.

O'Sullivan next argues that his claim is not preempted by the LMRA because he was not able to take full advantage of the grievance procedure established by the CBA. O'Sullivan declares that two days after he was terminated, he sent a letter to his shop steward complaining of his termination. (O'Sullivan Decl. ¶ 9).[1] According to O'Sullivan, the steward took no action, responding that the grievance was "too late" and that it would be "futile" to pursue it. (O'Sullivan Decl. ¶ 10). "About a month later," he received a letter from his union stating that the union did not intend to pursue O'Sullivan's grievance further. (O'Sullivan Decl. ¶ 10).

It is true that "[d]ischarged employees who lack access to the grievance procedure under the collective bargaining agreement cannot state a claim for breach of the collective bargaining agreement, and federal courts therefore lack jurisdiction over their section 301 claims." *Young*, 830 F.2d at 998 n. 2 (citing *Hollins v. Kaiser Foundation Hospitals*, 727 F.2d 823, 825 (9th Cir.1984)). This rule, however, applies where the employees are precluded by the CBA from resorting to the grievance procedure. *See Hollins*, 727 F.2d at 824–25 (federal court had no jurisdiction over probationary employee's claim for breach of CBA where CBA provided that during probation period, employee could be discharged without recourse to grievance procedure). Here, O'Sullivan did not lack access to the grievance procedure; thus the jurisdictional rule set forth in *Young* and *Hollins* is inapplicable.

For the foregoing reasons, O'Sullivan's cause of action for breach of contract is preempted by the LMRA.

### B.  Exhaustion of Grievances

■ Longview contends that O'Sullivan's claim must be dismissed because he failed to exhaust the CBA grievance procedures.[2] According to R.B. Arkell, Vice President of Industrial Relations and General Counsel of Longview Fibre Company, "[w]ithin 15 days of his discharge as required by the collective bargaining agreement, the Graphic Communications Union District Council No. 2 filed a grievance on O'Sullivan's behalf but did not pursue the grievance any further." (Arkell Decl. in Supp. of Motion ¶ 4).

■ "An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures before he may maintain a suit against his union or employer ...." *Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers or America*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981). The attempt need not result in a complete exhaustion of the grievance procedure, however. The employee is excused from complete exhaustion "if the union breaches its duty of fair representation." *Herman v. United Brotherhood of Carpenters*, 60 F.3d 1375, 1380 (9th Cir. 1995); *accord Croston v. Burlington Northern Railroad Company*, 999 F.2d 381, 386 (9th Cir.1993) (applying rule to claim under Railway Labor Act). Breach of the union's duty of fair representation is shown where "the union arbitrarily ignores a meritorious

---

1. *See* footnote 2, *infra*. Pursuant to the CBA, "Step I" of the grievance procedure involves the employee, the employee's immediate supervisor, and the employee's steward. (Arkell Decl. in Supp. of Removal, Ex. 1 (CBA § 27 B)).

2. Grievances are adjusted initially through a three-step process. The union or a union official is involved in each step. If the steps do not result in a settlement of the grievance, the dispute may be moved to arbitration, and ultimately to court. (*See* Arkell Decl. in Supp. of Notice of Removal, Ex. 1 (CBA §§ 27–28)).

grievance or processes it in a perfunctory fashion." *Herman*, 60 F.3d at 1380. Where, on summary judgment, an employee raises a triable issue that his "grievance was facially meritorious" and that "the failure to process [the] grievance results not from an exercise of good faith judgment but rather an egregious disregard for the rights of union members," his claim will not be dismissed for failure to exhaust. *Id.* at 1380–81.

O'Sullivan has submitted as evidence his own declaration stating that although he timely submitted his grievance to his steward, his steward told him that it was "too late." (O'Sullivan Decl. ¶ 10). This is evidence, albeit not strong evidence, that the union ignored O'Sullivan's grievance or processed it in a perfunctory manner. As to the substance of the grievance, O'Sullivan declares that after he was coerced into signing a statement that he smoked marijuana on a lunch break, he was fired. (O'Sullivan Decl. ¶ 6). O'Sullivan does not state that the statement he signed was untrue, or that under the CBA and Longview's Substance Abuse Policy, he could be fired only for smoking marijuana while actively working. Thus, the Court has before it no evidence that O'Sullivan's claim was meritorious. Accordingly, Longview is entitled to summary judgment on the ground that O'Sullivan has failed to exhaust the grievance procedure.

### C. Statute of Limitations

■ Assuming for the sake of argument that O'Sullivan has presented a triable issue that he is excused from the exhaustion requirements because of the union's breach of its duty of representation, Longview asserts that, in addition, O'Sullivan failed timely to file his action in court.

Section 301 of the LMRA, 15 U.S.C. § 185, contains no statute of limitations. Thus, courts are forced to borrow statutes of limitations from elsewhere. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 154, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983). In *DelCostello*, the Supreme Court held that in suits alleging that an employer breached a provision of a CBA and that the union breached its duty of fair representation by mishandling the ensuing grievance and arbitration proceedings, the six-month statute of limitations contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), governs both the claim against the employer and the claim against the union. *Id.* at 154, 165, 103 S.Ct. at 2281, 2291. The Court distinguished "a straightforward breach-of-contract suit under § 301" brought against an employer, which would be governed by the state's statute of limitations for breach of contract, from a "hybrid" claim against the employer and the union. *Id.* at 165, 103 S.Ct. at 2291. In the latter case, the breach of contract and fair representation claims are "inextricably interdependent." *Id.* "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union." The six-month statute of limitations for hybrid claims applies to LMRA-preempted state law causes of action, and to cases where the employee chooses to name only the employer as a defendant. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1046, 1049 (9th Cir.1987). *Id.* (alternations in original, internal quotations omitted).

In this case, although O'Sullivan chose to sue only Longview and not the union, the case is a "hybrid" for the reasons discussed in the exhaustion section, II.B., above. Accordingly, the six-month statue of limitations applies. Because O'Sullivan filed his complaint more than 20 months after he learned that the union would not pursue his grievance, (O'Sullivan Decl. ¶¶ 7–11; Complaint p. 1), his claim is time barred.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Longview's motion for summary judgment.

The Clerk shall close the file.

**IT IS SO ORDERED.**